578 A.2d 59

**Floyd RUDD**

v.

**LOWER GWYNEDD TOWNSHIP ZONING HEARING BOARD.**

**Appeal of TOWNSHIP OF LOWER GWYNEDD.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1990.

Decided July 10, 1990.

James J. Garrity, Norristown, with him, Deborah G. De-Lauro, Merion, Wisler, Pearlstine, Talone, Craig and Garrity, Norristown, for appellants.

Frank W. Jenkins, with him, Raymond Jenkins and George B. Ditter, Jenkins, Tarquini & Jenkins, Ambler, for appellee.

654

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

Lower Gwynedd Township (the Township) appeals an order of the Court of Common Pleas of Montgomery County which reversed a decision of the Lower Gwynedd Township Zoning Hearing Board (the Board) and granted a variance to Floyd Rudd (Rudd).

Rudd is the equitable owner of a parcel of property located in the Township. He has entered into a sales agreement to purchase the parcel from David and Valerie O'Donnell; the sale is contingent upon Rudd obtaining the necessary variances.

The parcel was subdivided in 1929. The Township's first zoning ordinance, enacted in 1947, made the lot nonconforming. That ordinance provided that a lot, held in single and separate ownership since the effective date of ordinance and which was too small under the ordinance's terms, could be built upon if a variance was obtained. The parcel is presently zoned "C Residential". Permitted uses within that district are single family detached dwellings, farming, municipal uses and accessory uses. The minimum lot size under the ordinance is 10,000 square feet; the parcel, held in single and separate ownership since 1929 has less than 5,000 square feet.

In July of 1988, Rudd sought variances for the undersized lot and to permit him to build with a side yard of eight and one-half feet as opposed to the required fifteen feet as well as a rear yard of thirty feet rather than fifty feet. At a hearing held on the application, the Board was informed that the O'Donnell's had applied for a similar variance in 1985. That request was denied and no appeal was taken.

Sometime thereafter, O'Donnell began construction of a building on the lot. According to O'Donnell's testimony, he had submitted plans to local zoning officials for the con-

struction of a garage. When he was told that his building permit would be issued, he commenced construction. The Township then issued a cease and desist order.[1]

O'Donnell and Rudd subsequently entered into an agreement of sale for the lot and partially completed building, contingent upon Rudd obtaining a variance to build a single family detached dwelling. Following a hearing, the Board denied the request for a variance, finding that Rudd had failed to prove his entitlement thereto. Rudd appealed to the Court of Common Pleas which reversed the Board. The Township then sought review by this Court.

Where the trial court, as here, takes no additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Bachman v. Zoning Hearing Board of Bern Township*, 508 Pa. 180, 494 A.2d 1102 (1985). The trial court held that the Board's denial of the variance was violative of the holding in *Jacquelin v. Horsham Township*, 10 Pa.Commonwealth Ct. 473, 312 A.2d 124 (1973). The appellant makes a number of allegations of error, none of which in our view are meritorious. Hence, we shall affirm.

In *Jacquelin*, the landowner owned a parcel of property in a zoning district that permitted only single family detached dwellings, and agricultural, conservational and recreational uses. Just as in the present case, the lot, which had been in existence prior to the enactment of the zoning ordinance, was too small to build upon without violating a number of dimensional requirements. The zon-

---

1. At the time O'Donnell applied for the variance, and thereafter, he owned a house and the lot in question. The house did not have a garage. The two were separated by an eighteen foot strip of land which was owned by another individual. O'Donnell testified that he intended to sell the house along with the garage. Section 701 of the Township's zoning ordinance permits four uses in this zoning district, those being a single family detached dwelling, farming, municipal uses and accessory uses. "Accessory uses" is defined as "[a] use customarily incidental and subordinate to the principal use of the land or a building or other structure on a lot or portion thereof *located on the same lot with such principle use.*" Section 301 of the Township's zoning ordinance. It is, therefore, apparent that the garage was not a permitted use under the ordinance.

ing hearing board there denied the requested variance because of the " 'magnitude of the variances requested, and the traffic hazard that could result from the reduction of the site [sic] triangle due to the location of this house close to Johnson Road' ". *Id.,* 10 Pa.Commonwealth Ct. at 475, 312 A.2d at 125. The trial court affirmed the board. We rejected the second proffered reason for denying the variance on grounds not relevant to the present case. As to the first argument, we stated:

> In *Poster Advertising Company, Inc. v. Zoning Board of Adjustment,* 408 Pa. 248, 182 A.2d 521 (1962), where all but a small portion of a lot was condemned, the Supreme Court reversed the lower court and Zoning Board of Adjustment which had denied a variance to permit the construction of outdoor advertising signs. The following passage from that case seems applicable here:
>
> 'The size and dimension of the land as presently constituted prevent the construction and use thereon of any residence property. The conclusion of the board to the contrary was not justified. In fact, the size and dimension permit a very limited number of productive uses, the most likely and practical being that contemplated. If this use is denied, the owner will be compelled to continue to pay taxes thereon, maintain the actual surface and adjoining sidewalks in a clean and reasonably safe condition in order to escape possible damage claims, without any return from the use of the property whatsoever.
>
> 'Of course, an economic hardship is not sufficient in itself to warrant the grant of a variance.... But this is not a case of "economic hardship" such as where the owner seeks to use the land in a more profitable manner. This is a case wherein any productive use of the land will be denied altogether. It is a case of the existence of a substantial hardship peculiar to this particular land'....

*Jacquelin* at 476–77, 312 A.2d at 125–26 (emphasis added) (citations omitted). We went on to hold that the variance should have been granted.

We believe that *Jacquelin* is indistinguishable from the present case.[2] There, the minimum lot size under the ordinance was 12,000 square feet while the landowner's lot was only 6,250 square feet. The lot was a corner lot and the ordinance required a yard of fifty feet from the abutting streets; the landowner's plan had a yard of fifty feet from one of the streets but only twelve feet from the other. Finally, the ordinance required an aggregate side yard of twenty-five feet with each side yard at least ten feet wide while the plans called for side yards of ten and twelve feet. When one looks to the variances sought by Rudd as set forth earlier in this opinion, it can be seen that the variances required in *Jacquelin* were of the same magnitude as sought by Rudd.

Appellant argues that we should not rely upon *Jacquelin*. Rather, it asserts that the present controversy should be controlled by *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983), where the Court stated:

> The standards governing the grant of a variance are equally well settled. The reasons for granting a variance must be substantial, serious and compelling.... The party seeking the variance bears the burden of proving that (1) unnecessary hardship will result if the variance is denied, and (2) the proposed use will not be contrary to the public interest.... The hardship must be shown to be unique or peculiar to the property as distinguished from a hardship arising from the impact of the zoning regulations on an entire district.... Moreover, mere

**2.** In the present case, Section 2301 of the zoning ordinance provides that the Board may grant a variance to an lot made undersized by enactment of the ordinance if the owner is unable to acquire the necessary additional ground on fair terms. The testimony shows that the only available land is the eighteen foot strip immediately adjacent to this lot. It is apparent that even the acquisition of this land would not make the lot large enough to comply with all of the dimensional requirements of the ordinance. The appellant does not argue that Rudd failed to comply with this requirement of the ordinance. Furthermore, in light of our holding in *Jacquelin*, we are uncertain that a municipality can require a landowner to attempt to acquire additional land when the lot in question cannot comply with a subsequently enacted zoning ordinance.

evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance.... In evaluating hardship the use of adjacent and surrounding land is unquestionably relevant.

*Id.,* 501 Pa. at 555–56, 462 A.2d at 640 (citations omitted). Appellant argues that the trial court erred in relying solely upon the "small lot" principle, thereby relieving Rudd from the normal burden of proof in a variance case. We do not agree. As we pointed out in *Jacquelin,* refusal to grant the variances in a "small lot" case would effectively preclude the landowner from obtaining any reasonable use of the land. In the present case, it is obvious that the land cannot be reasonably used as a farm, being in a residential neighborhood. Furthermore, as discussed in footnote one, the land cannot be used for an accessory use because there is no other "principle" use to which the accessory use can be subordinated. Finally, while it is true that there is no evidence in the record concerning a possible municipal use, the only remaining permitted use under the ordinance, there was no evidence in *Jacquelin* concerning other possible uses allowed under that ordinance, i.e., recreational or conservational uses, and we nonetheless ordered that the variance was required.

■ The appellant makes a number of arguments, all of which are meritless in light of our belief that the matter is controlled by *Jacquelin.* For the sake of completeness, however, we will discuss each of these arguments briefly. Appellant argues that the hardship was self inflicted because Rudd bought the property with the illegal partially completed construction thereon. We believe the existence of that structure is a makeweight in this matter. While we cannot condone O'Donnell's actions in commencing construction without first actually obtaining a building permit, we believe the variance in this case is required whether or not that structure is extant. A landowner must be permitted to make a reasonable use of his or her property. *Jacquelin.* It is our view that in this case, Rudd would be entitled to build a single family detached residence on the

property, whether it is built anew or by utilizing an existing illegal structure.

■ Appellant also argues the variance was properly denied by the Board because Rudd failed to prove that this case involves anything more than mere economic hardship. This argument is based upon the fact that Rudd testified that he did not intend to live in the house; rather, he intended to sell it. Appellant cites no cases, nor have we discovered any authority, requiring the owner of a "small lot" to live in the house built thereupon.[3] We refuse to engraft such a requirement to *Jacquelin* and its progeny.

■ Appellant finally argues that the trial court's order requiring the grant of the variance is violative of the principles of res judicata. It argues that Rudd's present application is identical to the one filed by O'Donnells in 1985. As previously mentioned, the Board there denied the variance and the O'Donnells never appealed that order. Because Rudd's purchase of the property is contingent upon his obtaining the necessary variances, the O'Donnell's are still the legal owners of the lot. Accordingly, appellant asserts that the four requisite identities are present, i.e., the thing being sued upon, the cause of action, the parties and the quality or capacity of the parties, *see Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975), and that the doctrine bars the trial court's action in reversing the Board.

We must initially note that the Supreme Court has cautioned that the doctrine of res judicata is to be used sparingly in zoning matters. *Id.* While the appellant's argument may be technically correct, we will not apply the principle of res judicata to reverse the trial court in this case. The O'Donnells in this case could make a "straw deed" conveying the property to another and that person could sign a sales agreement identical to the one used here. This would

---

**3.** Appellant also complains that Rudd failed to prove that the lot could be used in a less intensive manner than for a single family residence. Our prior discussion shows that this argument is meritless, as *Jacquelin* holds that one owning a "small lot" is entitled to a variance for a permitted use under the zoning ordinance.

destroy the identity of the parties, thereby precluding application of the doctrine. As Rudd's right to the variance is clear, we do not believe that resort to such legerdemain should be required, especially in view of the Supreme Court's mandate that res judicata is to be applied sparingly in zoning cases.

Affirmed.

Former CRUMLISH, Jr., President Judge did not participate in the decision in this case.

## ORDER

NOW, July 10, 1990, the order of the Court of Common Pleas of Montgomery County, dated June 26, 1989, at No. 89-00784, is affirmed.