IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Li Lan An, : 
             Appellant : 
                              : 
     v. : No. 776 C.D. 2019
                              : ARGUED: February 11, 2020
Zoning Hearing Board of O'Hara : 
Township, and Township of O'Hara : 

BEFORE:   HONORABLE ANNE E. COVEY, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                FILED: May 12, 2020

Appellant Li Lan An (An) appeals the Court of Common Pleas of Allegheny County's (Trial Court) June 6, 2019 order, in which the Trial Court affirmed the Zoning Hearing Board of O'Hara Township's (Board) June 18, 2018 Decision pertaining to 1.2 acres of R-1 residentially zoned real property (Property) owned by An. Through this Decision, the Board determined that the Property, located at 703 Woodland Drive in Pittsburgh, Pennsylvania, did not consist, as claimed by An, of two preexisting, nonconforming lots, *i.e.*, lots that were rendered smaller and narrower than permitted under a zoning ordinance enacted after the lots' creation. In addition, the Board concluded that An was not entitled to dimensional variance relief from the Township of O'Hara (Township) Zoning Ordinance's lot size and lot width requirements. We affirm in part and vacate and remand in part.

## Facts and Procedural History

On March 22, 1950, the Rodgers Acres Plan of Lots (Rodgers Acres Plan) was recorded with the Allegheny County Recorder of Deeds, subdividing a large

parcel of land in the Township into 21 lots, including Lots 16 and 17, which are central to the current dispute. Transcripts of Testimony (T.T.) at 109.[1] The boundary between Lot 16 and Lot 17, as shown on the Rodgers Acres Plan, ran in a generally northwest to southeast direction. *Id.*

In October 1967, a "Two Lot Subdivision Plan" (1967 Plan) was created for Robert B. McWilliams, who owned Lots 16 and 17 at that time. T.T. at 76-77. The 1967 Plan identified Lots 16 and 17, using a dotted line to demarcate the then-existing boundary between them, and called for Lots 16 and 17 to be reconfigured by a new property line that divided them in roughly a north-northwest to south-southeast direction. *Id.* The 1967 Plan lists the area on the western side of the new lot line as encompassing 40,000 square feet and the area on the eastern side as encompassing 50,962 square feet. Record evidence shows that both this latter measurement and new lot line comport with the current dimensions and western boundary of the Property. *Id.* at 76-77, 106, 108, 141; Notes of Testimony (N.T.), 5/7/18, at 14, 23. The record also shows that the western half is listed on tax records as a single 41,000-square-foot tax parcel. T.T. at 108. On December 16, 1969, the Township's Planning Commission approved McWilliams' "request for a two-lot subdivision[.]" *Id.* at 75. This letter of approval does not state whether the approval was for the 1967 Plan, which, again, was drafted in October 1967. *Id.*

There is no documentation in the record indicating what happened with this two-lot subdivision during the 15 years after the Planning Commission's approval. The record reflects that the Property, which comprises the eastern half of this

---

[1] The Court of Common Pleas of Allegheny County electronically filed the record in multiple parts, designated as "Trial Court Record," "Transcripts of Testimony," and "Trial Court Opinion." Some of this matter's evidence is found in only one of these parts of the record, while other pieces of evidence have been duplicated and are included in more than one of the parts of the record.

subdivision, was sold in 1984 and 2000. *Id.* at 87-88. The deed for the 2000 sale describes the Property, in relevant part, as "being parts of Lots Nos. 16 and 17 in [the] Rodger's [sic] Acres Plan" and identifies the Property as having one "block and lot number": 290-B-112. *Id.* This number is the same as the Property's single, current tax parcel number. *See id.* at 106, 108, 141. In addition, the record contains a document entitled "A Revision of a Portion of the Rodgers Acres Plan [Plan Book Volume] 45, [Page] 117[,]" which was created in 1984, just prior to the aforementioned sale. Trial Court Record (R.) at 141. This document depicts the Property, as well as the original boundary line between Lots 16 and 17, and includes the descriptors "Lot 16" and "Lot 17" on the portions of the Property that were originally parts of those two lots. *See id.*

On July 19, 2002, the Property was purchased by An and Sanford Leuba (Leuba), who were married at that time. The deed memorializing this sale describes the Property in substantially the same way as the 2000 Property deed. T.T. at 93.[2]

In December 2002, the Township enacted its current Zoning Ordinance. Of relevance to this matter, this Zoning Ordinance mandates that lots zoned R-1 residential have a minimum area of 40,000 square feet and a minimum width of 15 feet. Township of O'Hara Zoning Ordinance (Zoning Ordinance) § 72-4.18(A)-(B).

Leuba and An subsequently divorced. Leuba conveyed his joint interest in the Property to An via a deed recorded on July 10, 2015, making her the sole owner of the Property at that point in time. R. at 119-25; Board's Decision, 6/12/18, Findings of Fact (F.F.), ¶5.

---

[2] None of the parties dispute the validity of the deeds in this matter. The relevant issue, as explained *infra*, is that there are significant gaps in the record, so it is difficult to ascertain how the Property came to be in its present configuration, or the complete chain of title from 1950 to the present day.

3

On November 22, 2017, An submitted to the Township an "Application for Minor (Preliminary/Final) Subdivision Approval" requesting permission to subdivide the Property into two lots. R. at 139. This proposed subdivision would create R-1 zoned lots smaller than the Zoning Ordinance-mandated 40,000 square feet. *Id.*; *see* Zoning Ordinance § 72-4.18(A). On December 6, 2017, An also filed an application with the Board, requesting a dimensional variance from this minimum lot size requirement. R. at 84-85.

On January 8, 2018, the Board convened a public hearing to consider An's dimensional variance request. At the beginning of the hearing, Scott Chermak, the Township's code enforcement officer, explained that An's proposed subdivision plan violated the Zoning Ordinance regarding minimum lot width and that the subdivision plan thus necessitated a dimensional variance from that requirement as well. Board Hr'g Tr., 1/8/18, at 6, 16; *see* Zoning Ordinance § 72-4.18(B) (minimum width for R-1 residential-zoned lots is 150 feet); R. at 72-73 (Board hearing notices).

Despite An's request for the dimensional variances, An's attorney also argued that the Property actually consisted of two preexisting, nonconforming lots and that variance relief was not actually necessary. Board Hr'g Tr., 1/8/18, at 7-14. He also stated that many lots near the Property are smaller than 40,000 square feet, specifically referencing parcels on Woodland Drive and other, nearby roads; according to An's attorney, this showed that the proposed subdivision would not produce lots that were out-of-character with the surrounding neighborhood. *Id.* at 14-16. Chermak responded that at least one of the nearby lots mentioned by An's attorney was actually zoned R-2 residential and, thus, was subject to different minimum size requirements than the Property. *Id.* at 17. An's attorney subsequently

4

stated that An was seeking permission to subdivide the Property because "[s]he wants to sell [the vacant portion] as a separate lot." *Id.* at 18.

Louis Marsico, current owner of a parcel adjacent to the Property, testified that Lots 16 and 17 were "re-subdivided" in 1977, resulting in configuration of his parcel and the Property as 2 unitary lots. Board Hr'g Tr., 1/8/18, at 20, 31-32. Marsico claimed that he owned both his parcel and the Property after this alleged resubdivision. *Id.* at 21, 31. There is no documentation in the record supporting or refuting Marsico's assertions that Lots 16 and 17 were "re-subdivided" in 1977 or that he once owned the entirety of both lots. Marsico also disputed the contention that many nearby R-1 parcels are smaller than the Zoning Ordinance-required 40,000 square feet, and made broad objections to An's variance request. *Id.* at 20-22, 30-33.[3]

An testified that when she and Leuba purchased the Property in 2002, she assumed it consisted of two lots because of the way it was described in the deed she received from the previous owners. *Id.* at 36-37.

At the close of the hearing, the Board denied An's application for variance relief by a two-to-one vote. *Id.* at 41. The Board issued a written decision issued on February 9, 2018, in which it stated that

> [An] has not met the requirements of the [Pennsylvania] Municipalities Planning Code [(MPC)[4]] for a variance . . . to wit:
>
> > a. The hardship is self-induced. The Board specifically concludes that the proposed reduction of lot area and frontage will create undesirable conditions.

---

[3] The Board also heard from several other individuals, who all opposed An's request. Board Hr'g Tr., 1/8/18, at 23-30, 33-35, 39-40.

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

5

b. The change is not minimal.

c. The essential character of the community will be affected. Indeed, the Board concludes as a matter of law that the proposed changes to the property will not blend with the overall sense of the community and will impair the surrounding property.

d. The change would not be the least intrusive of all options.

R. at 98-101; Board's Decision, 2/9/18, Conclusions of Law (C.L.) ¶9(a)-(d).[5]

---

[5] The Township's Zoning Ordinance contains a section governing the granting of variances, which states, in relevant part:

The Board may grant a variance provided the following findings are made where relevant in a given case.

1. That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the Zoning Ordinance in the neighborhood or district in which the property is located.

2. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

3. That such unnecessary hardship has not been created by the appellant.

4. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use of development of adjacent property, nor be detrimental to the public welfare.

An then appealed the Board's denial to the Trial Court on February 20, 2018. On appeal, An argued to the Trial Court that the Board had erred by denying her request for variance relief and, in addition, had completely failed to address the question of whether the Property was comprised of two preexisting, nonconforming lots. An's Statutory Appeal, 2/20/18, ¶¶9-17.

The Trial Court remanded this matter to the Board on March 27, 2018, directing the Board to "allow [An] to develop theory of non-conform [*sic*] pre-existing [sic] use." Trial Ct. Or., 3/27/18, at 1. The Board complied and held a second hearing on May 7, 2018. An testified that she had done additional research during the intervening time period; she declared that she was certain the Property contained two lots and that, had she known that the Property was a single unitary parcel, she would never have purchased it in 2002. Board Hr'g Tr., 5/7/18, at 8-10. *Id.* In addition, An told the Board she had regularly mowed the Property's yard since 2006, because she had hoped that her son would eventually build a home on the vacant part of the Property. *Id.* at 9. An said circumstances had since changed and "now[,] for economic reasons, I have no use for [that part of the Property], and the [cost of] upkeep and maintenance is very high." *Id.* She also claimed that her research had revealed that most of the lots in her area, including some created through previously granted subdivisions, were smaller that the Zoning Ordinance-required 40,000 square feet. *Id.* at 10. Despite these claims, An never explained the

5. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Zoning Ordinance § 72-18.155. This wording is identical to that used in the MPC's variance test. *See* Section 910.2(a) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

nature of her research to the Board, nor did she provide the Board with any specific evidence supporting her claim that her Property was, in fact, two lots.

An's attorney presented documents pertaining to the Rodgers Acres Plan and the 1967 Plan, as well as a title report and several of the deeds issued over the years for the Property. *Id.* at 11-18. He argued that this evidence showed that the Property was really comprised of two portions of what were originally Lots 16 and 17. *Id.* at 18-21, 37-43. According to An's attorney, these portions had never been joined as one piece of land and were still two separate lots, the existence of which predated the Township's adoption in 2002 of its current Zoning Ordinance. *Id.* An's attorney acknowledged that the Property only had one tax parcel number, but called that fact "curious," as he had been unable to determine how exactly that had happened. *Id.* at 21.

The Board then questioned An's attorney about the import of the dotted line on the 1967 Plan, which traced the original boundary between Lots 16 and 17. *Id.* at 22-24. An's attorney argued, in essence, that the 1967 Plan had not eliminated the original lot boundary between Lot 16 and Lot 17, but rather, had created four lots out of the original two. *Id.* at 22-28. The Board's members expressed skepticism towards these arguments, pointing out that the square footage listed for the portion of the 1967 Plan east of the new dividing line was virtually identical to the square footage of the Property. *Id.* at 23-28. Julie Jakubec, the Township's manager, also informed the Board that the Property had been depicted on the Township's tax maps as one parcel of land, with rather consistent boundaries, since the Planning Commission had approved McWilliams' two-lot subdivision in 1969. *Id.* at 24-25.

Louis Marsico again appeared and testified in opposition to An's variance request. He informed the Board that his tract is "one tax parcel" and that his house,

8

which was built in 1978, straddles the old boundary line between Lots 16 and 17. Board Hr'g Tr., 5/7/18, at 28-30. According to Marsico, he and An each owned "two half lots[.]" *Id.* at 48. Marsico did not believe, however, that this gave either him or An ownership of two lots; rather, the "half lots" had lost their independent identities as a result of being subdivided. *Id.* at 48-50.[6] Though the maps in the record support Marsico's claims that his lot has one tax number and that his house straddles the old boundary line between Lots 16 and 17, *see, e.g.*, T.T. at 105-07, the remainder of his testimony at the Board's May 2018 hearing is neither confirmed nor disproven by any other substantive evidence in the record.

At the conclusion of the hearing, the Board unanimously voted to deny An's request for variance relief. Board Hr'g Tr., 5/7/18, at 62. The Board memorialized this decision through a formal decision issued on June 18, 2018. In this decision, the Board stated that it found Marsico's testimony to be credible and reiterated its previous determination that An had not established that she was entitled under the MPC to her sought-after variances, because

> a. The hardship is self-induced [and] the proposed reduction of lot area and frontage will create undesirable conditions[;]
>
> b. The change is not minimal[;]
>
> c. The essential character of the community will be affected [and] the proposed changes to the [P]roperty will not blend with the overall sense of the community and will impair the surrounding propert[ies; and]
>
> d. The change would not be the least intrusive of all options.

---

[6] Several other individuals also registered their opposition at this hearing to An's request for variance relief. Board Hr'g Tr., 5/7/18, at 31-37, 55, 59-60. In addition, there was again discussion regarding whether there were a significant number of nonconforming lots already in existence near the Property. *See id.* at 43-47, 50-59.

R. at 105; Board's Decision, 6/18/18, C.L. ¶¶9-10. In addition the Board made the following findings of fact and conclusions of law regarding whether the Property actually consisted of two preexisting, nonconforming lots:

> [An] now advances the position that her [P]roperty contains two recorded lots which predate the enactment of the revised Zoning Ordinance of 2002. That revision required a larger square footage and a longer frontage for any proposed lots in a new subdivision. [An] took title to her [P]roperty in July of 2002 shortly before the 2002 revision of the Township['s] Zoning Ordinance. . . .

> [An] primarily relies on two facts: first, that the Rodgers [Acres] Plan of lots shows [L]ots 16 and 17 were recorded in the Recorder's Office of Allegheny County and second, that the deed [for the Property] recited the fact that both lots were conveyed to [An and Leuba] in July of 2002 and subsequently re-conveyed to [An] by deed pursuant to her divorce in 2015 with the same reference to the two lots. Unfortunately neither deed contained a meets [sic] and bounds description. The real estate tax department of Allegheny County references the property as one tax parcel, *i.e.*[,] 290 B 112. Further, . . . Chermak testified that the only document that the Township was able to locate was a plan showing the property as one parcel in 1967. At some point in the deed descriptions it appears that the deed drafter wanted the property to appear to be one parcel.

> . . . .

> The Board . . . finds as a fact that [An] has used the subject property as a single lot and has not attempted to maintain the . . . [P]roperty as two separate and distinct lots. [An] herself testified that she mowed her large yard every week to keep the [P]roperty looking attractive but did nothing to physically separate the two parcels one from the other.

R. at 104; Board's Decision, F.F. ¶¶4-5, 8.

> The Board finds that [An] has not met her burden that her property consists of two pre-existing non-conforming lots. At best she has parts of two pre-existing [sic] lots which

10

she purchased and used as one lot with a single structure and residence. . . .

> The Board concludes as a matter of law, that even if [An] had two separate and distinct pre-existing nonconforming lots, she has not met her burden that they were not merged after the passage of the Zoning Ordinance revision in 2002. The Board concludes that the burden is on [An] to demonstrate by clear and convincing evidence as to physical improvements that would keep the lots from merging under a new and more restrictive ordinance. Lots are presumed to merge as necessary to comply with a zoning ordinance's lot size requirements where they are under common ownership prior to the passage of the ordinance. It is the landowner's burden to rebut this presumption by proving an intent to keep the lots separate and distinct. In doing so it is not the landowner's subjective intent but rather some overt or physical manifestation of intent to keep the lots separate and distinct. No such physical manifestation has been shown in this case.

R. at 105; Board's Decision, C.L. ¶¶11-12. An appealed to the Trial Court, which took no additional evidence and affirmed the Board on June 6, 2019. This appeal followed.

## Arguments On Appeal

### An's Position

An presents several arguments for our consideration. First, An claims that the Board erred by determining that the hardship pertaining to developing the Property was self-induced. An's Br. at 9-16. She argues that relief is warranted under the relaxed standards for granting dimensional variances, and states that the "Lot 16" portion of the Property cannot be developed without such relief, as well as that subdividing the Property in accordance with her proposal would not affect the character of the neighborhood or affect public safety. *Id.* at 12-13. As she did before the Board, An alleges that there are many other lots in the area which do not conform

to the Zoning Ordinance's minimum lot size and lot width requirements for R-1 parcels. *Id.* at 13. She also insists that the sought-after variances represent the minimum necessary to afford relief, as they would result in only slight deviations from the Zoning Ordinance's requirements. *Id.* at 13-14. An cites to *Jacquelin v. Horsham Township*, 312 A.2d 124 (Pa. Cmwlth. 1973), as well as several similar cases,[7] to support her statement that "where a dimensional nonconformity predates the applicable zoning ordinance, Pennsylvania law requires that some relief be granted in order to allow the owner some productive use of his property." An's Br. at 14-16.

Next, An claims that the Board erred by finding that the Property did not consist of two preexisting, nonconforming lots. *Id.* at 16-19. She states that the record evidence actually establishes that the portions of what used to be Lots 16 and 17 which comprise the Property were never combined, even after the Township's Planning Commission approved the two-lot subdivision for McWilliams in 1969. An argues that this is shown by record evidence regarding chain of title, deeds, and development plans for the Property and by the shift in terrain between the aforementioned lot fragments, as well as by the fact that her house and driveway are entirely on what used to be part of Lot 17, and that no parcel has 701 Woodland Drive as its address (*i.e.*, the house numbers on that side of Woodland Drive skip from 699 directly to 703). *Id.* at 18-20.

Finally, An claims that the Board erroneously determined that her preexisting, nonconforming lots had merged. *Id.* at 20-21. She argues that the question of merger only comes into play where a municipality has expressly incorporated a merger

---

[7] *Poster Advertising Co., Inc. v. Zoning Bd. of Adjustment*, 182 A.2d 521 (Pa. 1962); *Tinicum Twp. v. Jones*, 723 A.2d 1068 (Pa. Cmwlth. 1998); *Rudd v. Lower Gwynedd Twp. Zoning Hearing Bd.*, 578 A.2d 59 (Pa. Cmwlth. 1990).

provision into its zoning ordinance. *Id.* at 20-21. Furthermore, An maintains that, even assuming merger applies in this instance, the Board erroneously placed the burden of proof on her to show that the Property's fragments of Lots 16 and 17 had not merged, when it was actually the Township's burden to show that they had merged. *Id.* at 21-23.

## Township's Position

The Township responds[8] that An failed to satisfy any of the five prongs of the variance test, and that the Board's findings and conclusions to that effect are well-supported both factually and legally. Township's Br. at 11-18. The Township notes that, while the standard is not as high for granting dimensional variances as it is for use variances, it is well-established that dimensional variances are not to be given out freely in the absence of the applicant satisfying this test. *Id.* at 12-13. According to the Township, An merely wants to maximize the development and financial potential of the Property, which is not sufficient justification for obtaining variance relief. *Id.* at 13-14. The Township argues that An's reliance on *Jacquelin* and the other, similar cases is misplaced, because it presupposes that the Property consists of two preexisting, nonconforming lots, which (according to the Township) is not true, and because those cases did not deal with subdivision applications that would result in nonconforming lots. *Id.* at 18-20. The Township points out that An is effectively trying to combine two mutually exclusive arguments; either the Property is one lot and, thus, dimensional relief is necessary in order to facilitate subdivision, or the Property is two preexisting, nonconforming lots, in which case dimensional relief would be unnecessary. *Id.* at 19-20.

---

[8] The Board filed a letter with our Court, in which it stated that it joined the Township's Brief.

13

Next, the Township argues that An failed to show that the Property consists of two preexisting, nonconforming lots. Rather, the record conclusively shows that the current configuration of the Property was created in 1969, when the Township's Planning Commission approved the McWilliams subdivision. *Id.* at 20-25. According to the Township, the McWilliams subdivision extinguished Lots 16 and 17, dissolved the previous boundary between them, and created two new lots, *i.e.*, the Property and Marsico's parcel. *Id.* The Township maintains that the more recent record evidence, including the Allegheny County tax maps and the deeds memorializing the Property's ownership transfers in 1984, 2000, and 2002, support the conclusion that the Property is one unified lot. *Id.* at 26-29. The Township states that this is more than sufficient evidentiary support for the Board's findings. Township's Br. at 29-30. The Township asserts that the level of evidentiary support compares favorably to that which the Commonwealth Court deemed sufficient in a similar case, *DiCicco v. City of Philadelphia* (Pa. Cmwlth., No. 2625 C.D. 2015, filed May 10, 2017), 2017 WL 1927897. Township's Br. at 29-30.

As for the various deeds' references to Lots 16 and 17, the Township states that these are merely historical reference points, tying the Property's boundaries and territory back to the Rodgers Acres Plan that originally created Lots 16 and 17, and are of the type that are common in deed descriptions. *Id.* at 30.

Next, the Township agrees with An that merger does not apply here. *Id.* at 31-32. The Township argues this is because the alleged preexisting, nonconforming lots never existed in the first place. *Id.* In the alternative, the Township asserts that the Board properly placed the burden of proof on An to disprove merger. *Id.* at 32-34. The Township cites *In re Appeal of Moyer*, 978 A.2d 405 (Pa. Cmwlth. 2009), for the proposition that the two nonconforming lots, if they existed at one point, were

14

presumed to have merged when the Township adopted its current Zoning Ordinance in 2002, in order to comply with the new minimum lot size and width requirements. Township's Br. at 32-34. According to the Township, it was An's burden to show that this merger had not happened, a burden which she failed to satisfy. *Id.* at 34.

Finally, the Township argues that, even if the Property does consist of two preexisting, nonconforming lots, the Zoning Ordinance would have barred her proposed subdivision. *Id.* at 34-36. In support of this argument, the Township cites Section 72-16.128 of the Zoning Ordinance, which prohibits building a single-family home on a nonconforming lot if that lot is held in common ownership with other, adjacent lots. Township's Br. at 34-35.[9] Thus, as both of the Property's nonconforming lots would be owned by An, she could not build a home on the currently vacant fragment that was originally part of Lot 17. *Id.* at 35-36.

---

[9] This section of the Zoning Ordinance reads as follows:

> **Nonconforming Lots of Record**
> In any district in which single-family dwellings are permitted, notwithstanding limitations imposed by other provisions of this [Zoning] Ordinance, a single-family dwelling and customary accessory buildings may be erected on any single lot of record at the effective date of adoption or amendment of this [Zoning] Ordinance, provided said lot was not created in violation of prior existing zoning and subdivision regulations. Such a lot must be in separate ownership and not of continuous frontage with other lots in the same ownership. This provision shall apply even though such lot fails to meet the requirements for area or width or both that are generally applicable in this district, provided that yard dimensions and other requirements not involving area or width or both of the lot shall conform to the regulations for the district in which such lot is located. Variance of area, width and yard requirements shall be obtained only through action of the . . . Board.

Zoning Ordinance § 72-16.128.

**<u>Discussion</u>**

Since the Trial Court took no additional evidence, our standard of review is restricted to determining whether the Zoning Board committed an abuse of discretion or an error of law. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983). "We may conclude that the [Zoning] Board abused its discretion only if its findings are not supported by substantial evidence. . . . By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 640 (citations omitted).

Broadly speaking, An pursues two, mutually exclusive lines of argument. First, the Property consists of one, undivided parcel, for which variance relief is warranted in order to allow An to pursue her desired subdivision plan. Second, the Property is made up of two preexisting, nonconforming lots, which thus renders variance relief unnecessary. We address each of these contentions in turn.

**Variance to Divide Unitary Parcel**

Assuming that the Property is one, unitary parcel, rather than two preexisting, nonconforming lots, we hold the Board properly determined that An failed to satisfy the criteria for obtaining her desired dimensional variances. "To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building [or property] into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998). "The quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id.* at 48.

16

However, this does not mean that "dimensional requirements . . . [are] 'free-fire zones'[.]" *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of City of Phila.*, 771 A.2d 874, 877 (Pa. Cmwlth. 2001). To that effect, our appellate courts have "consistently reject[ed] requests for dimensional variances where proof of hardship is lacking. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*." *Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012). Indeed, "[a] variance, whether labeled dimensional or use, is appropriate 'only where the *property*, not the person, is subject to hardship.'" *Yeager v. Zoning Hearing Bd. of City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (emphasis in original). Thus, the onus is on the applicant to firmly establish that "a substantial burden . . . attend[s] *all* dimensionally compliant uses of the property, not just the particular use [that the applicant has chosen]." *Yeager*, 779 A.2d at 598 (emphasis in original).

As noted above, both An and her attorney admitted that her subdivision application, and the related dimensional variance she requested, were rooted in economic concerns, *i.e.*, An's desire to reap a profit, and divest herself of a financial encumbrance, by selling off the undeveloped portion of the Property. *See* Board Hr'g Tr., 1/8/18, at 18; Board Hr'g Tr., 5/7/18, at 9. Rather than attempt to show that the Property could not be developed in compliance with the Zoning Ordinance's dimensional requirements, An instead put forth two propositions: first, refusing to grant the desired variances would impair her ability to use the Property as she desired, and second, subdividing the Property into undersized lots would not change

17

the character of the surrounding area, due to the putative plethora of nearby, nonconforming lots. *See*, *e.g.*, Board Hr'g Tr., 1/8/18, at 14-16, 37-39; Board Hr'g Tr., 5/7/18, at 9-10. These claims fall far short of the substantive evidence needed to justify An's desired dimensional variances. Therefore, the Board did not err by concluding that An's supposed hardship regarding developing the Property was "self-induced." Board's Decision, 6/18/18, C.L. ¶9(a).

For these reasons, we affirm the portion of the Board's decision that denied An's request for a dimensional variance.

### Alleged Preexisting Nonconforming Lots

The more complicated matter stems from the Board's reasoning regarding whether the Property consists of two preexisting, nonconforming lots. Unfortunately, the Board did not thoroughly address the serious gaps and inconsistent evidence in the record. It merely found that "[a]t some point in the deed descriptions[,] it appears that the deed drafter wanted the [P]roperty to appear to be one parcel" and noted that the Property had only one tax parcel number. Without discussion, the Board deemed Marsico's testimony to have been "factual, accurate and persuasive." *See id.*, F.F. ¶¶5-6; Board Hr'g Tr., 1/8/18, at 20-22, 30-33; Board Hr'g Tr., 5/7/18, at 28-30, 48-50. The Board sidestepped much of the confused and contradictory record evidence by assuming that the Property consisted of two lots prior to the enactment of the current Zoning Ordinance in 2002, and then explaining why, in its view, the two lots were now one unitary parcel that was coterminous with the boundaries of the Property. *See* Board's Decision, 6/18/18, F.F. ¶8; *id.*, C.L. ¶¶11-12.

The Board's attempt to avoid these thorny problems only served to further complicate its analysis, as parts of the Board's Findings of Fact contradict each other.

18

To wit, the Board noted that "Chermak testified that the only document that the Township was able to locate was a plan showing the property as one parcel in 1967 [*i.e.*, the 1967 Plan]." *Id.*, F.F. ¶5. However, the Board also stated that

> Marsico . . . testified he purchased property including parts of Lots 16 and 17 that are in the Rodgers Drive property in 1977. He constructed his home on those parts of the two lots that face Rodgers Drive. He subsequently sold off the remaining parts of Lots 16 and 17 as a single parcel. Thus, he combined parts of the two "lots" into one lot which he subsequently conveyed to this Applicant or her predecessors in title.

*Id.*, F.F. ¶6.

This creates a blatant paradox. If the 1967 Plan showed An's Property as one unified lot, the Board could not reasonably find Marsico credible when he said that he combined parts of Lots 16 and 17 to create the Property at some point after 1977. Either the Property was one lot in 1967, which would mean that Marsico's testimony was inaccurate, or the Property remained two lots until Marsico became involved, which would mean that the 1967 plan showing the Property as one lot would have to be disregarded. Both things cannot simultaneously be true. Moreover, it is unclear how the Board could have deemed credible Marsico's claims that he subdivided Lots 16 and 17 in 1977, or shortly thereafter, then combined portions of those lots to create the Property, and then sold the Property to a heretofore unidentified buyer or buyers, when there is no substantive record evidence, in the form of deeds, subdivisions plans, or other documentation, that lends the slightest credence to his statements. Indeed, Marsico could not possibly have subdivided Lots 16 and 17 in 1977, because there is no dispute that those lots *had previously been subdivided* through the Planning Commission's approval of McWilliams' request in 1969.

19

This is in contrast to *DiCicco*, the case cited by the Township in its appellate brief. In *DiCicco*, the landowners claimed that their property contained two preexisting, nonconforming lots and sought permits to build a single-family home on each one. Slip op. at 1-3. The Philadelphia Department of Licenses and Inspections (L&I) initially granted these permits; however, L&I revoked the permits shortly thereafter, explaining that, though the property had recently been given two tax parcel numbers, zoning records showed that the property was, in actuality, a single lot. *Id.* at 1. Ultimately, this Court affirmed the Philadelphia Zoning Board of Adjustment's (ZBA) decision to uphold L&I's revocation of the permits. *Id.* at 2. The record in *DiCicco* conclusively established that the landowners' property had previously existed as a single, undivided zoning lot with 1 street address and 1 tax parcel number for more than 60 years, at minimum, and had been conveyed in both 1969 and 2013 via deeds "that included both parcels [*i.e.*, the putative preexisting, nonconforming lots] but stated separate legal descriptions for each parcel." *Id.* at 3-5. In addition, the record showed that a house had been built on this property in 1952, one which straddled what the landowners claimed was the boundary line between the alleged preexisting, nonconforming lots. *Id.* at 4. The only evidence, so to speak, that these nonconforming lots even existed were the initially granted L&I permits themselves, in which the landowners' property was described as consisting of two lots, each with a separate mailing address. *Id* at 1-4. We therefore ruled that the ZBA's determination that the landowners' property was one unified lot was supported by substantial evidence. *Id.* at 26-35.

In *DiCicco*, however, the Philadelphia Zoning Board of Adjustment issued thorough, detailed findings of fact and conclusions of law. Moreover, the record evidence was not nearly as muddled as it is here. Slip op. at 17-38; 2017 WL

1927897, at *11-*17. The Board's decision here was not nearly as thorough, nor was it adequately supported by the record. *DiCicco* is thus clearly distinguishable from the matter currently before us.

Furthermore, the Board erred in concluding that the two preexisting, nonconforming parcels, if they had ever existed, had presumptively merged as a result of the Zoning Ordinance being enacted in 2002, and then incorrectly placed the burden on An to disprove this assumption. The "merger of lots doctrine is only triggered where a local municipality has adopted a merger of lots provision. It is axiomatic that merger of lots shall not be presumed merely because two adjoining lots come into common ownership[, as] merger of lots is a creature of local ordinance, not common law." *Loughran v. Valley View Developers, Inc.*, 145 A.3d 815, 821-22 (Pa. Cmwlth. 2016). The Township's Zoning Ordinance does not contain a merger provision and, instead, declares that "[i]t is the intent of this [Zoning] Ordinance to permit [preexisting] nonconformities to continue until they are removed, but not to encourage their survival." Zoning Ordinance § 72-16.127(B). Thus, the Board committed an error of law by determining that the concept of merger of lots was even applicable here.[10]

Nor does the Township's remaining argument, *i.e.*, that the Zoning Ordinance bars development of commonly owned, adjoining, nonconforming lots, save this portion of the Board's Decision. Section 72-16.128 of the Zoning Ordinance, upon which this argument is based, states in relevant part that

---

[10] The Township concedes as much by agreeing with An that merger does not apply here. Township's Br. at 31-32. However, the Township's reliance on *In Re Appeal of Moyer*, which it cites in its Brief and through which it attempts to support its argument that An failed to satisfy her supposed burden of proof, is entirely misplaced. To reiterate, there is no presumption that lots under common ownership merge to satisfy the requirements of a new zoning ordinance, *unless that zoning ordinance contains a merger provision*. *Loughran*, 145 A.3d at 821-22.

21

> a single-family dwelling and customary accessory buildings may be erected on any single [preexisting, nonconforming] lot . . . provided said lot was not created in violation of prior existing zoning and subdivision regulations. Such a lot must be in separate ownership and not of continuous frontage with other lots in the same ownership.

Zoning Ordinance § 72-16.128. The plain language of this provision merely prevents An from building a home on the vacant, putatively preexisting, nonconforming lot herself; *it does not bar her from selling this vacant lot to another individual, who would then be free to erect a single-family home on the lot*. *See Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006) ("[T]he primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. . . . Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit."). Given that An merely seeks to have her Property recognized as being two preexisting, nonconforming lots, in the alternative to her request for dimensional variances, Section 72-16.128 is irrelevant at this juncture.

For these reasons, we conclude the Board's decision that the Property is not two preexisting, nonconforming lots was insufficiently reasoned, partially unsupported by substantial evidence, and partially based on an error of law. Accordingly, we will vacate the portion of the Board's decision addressing whether the Property consists of one parcel or two, and we will remand for further proceedings consistent with this opinion.

## Conclusion

In sum, we affirm the Trial Court's June 6, 2019 order, insofar as it affirms the Board's denial of An's request for dimensional variance relief. However, we

22

otherwise vacate this order, to the extent that it affirms the Board's findings and conclusions that the Property either was never two preexisting, nonconforming lots, or that these preexisting, nonconforming lots existed at one point, but merged upon the enacting of the 2002 Zoning Ordinance. In addition, we remand in part to the Trial Court, with instructions that it further remand this matter in part to the Board, so that the Board can properly resolve the question of whether the Property is, in fact, one parcel or two preexisting, nonconforming lots.


_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Li Lan An,                      :
              Appellant      :
                            :
        v.                   : No. 776 C.D. 2019
                            :
Zoning Hearing Board of O'Hara   :
Township, and Township of O'Hara  :

# **O R D E R**

AND NOW, this 12th day of May, 2020, the Court of Common Pleas of Allegheny County's (Trial Court) June 6, 2019 order is hereby AFFIRMED IN PART, insofar as it affirms Appellee Zoning Hearing Board of O'Hara Township's (Board) denial of Appellant Li Lan An's request for dimensional variance relief, and VACATED IN PART, to the extent that this order affirms the Board's findings and conclusions that the at-issue property either was never two preexisting, nonconforming lots, or that these preexisting, nonconforming lots existed at one point, but merged upon the Township of O'Hara's enactment of a new zoning ordinance in 2002. It is FURTHER ORDERED that this matter is REMANDED to the Trial Court for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge

Li Lan An, :
            Appellant :
                        :
       v. :
                        :
Zoning Hearing Board of O'Hara :   No. 776 C.D. 2019
Township, and Township of O'Hara :   Argued: February 11, 2020

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

CONCURRING AND DISSENTING
OPINION BY JUDGE FIZZANO CANNON      FILED: May 12, 2020

        I concur with the majority opinion to the extent it affirms the June 6, 2019 order of the Court of Common Pleas of Allegheny County (trial court) denying Li Lan An (An) dimensional variance relief. Additionally, I join with the majority opinion insofar as it concludes that the Zoning Hearing Board of O'Hara Township (Board) erred as a matter of law by applying the merger of lots doctrine in this case and finding that if An's property had at one time consisted of two preexisting, nonconforming lots, these lots were presumptively merged by virtue of the enactment of a zoning ordinance in December 2002 by the Township of O'Hara (Township). As the majority aptly notes, the Township's 2002 zoning ordinance did "not contain a merger provision." Maj., slip op. at 21. I must, however, depart from the majority to the extent it vacates the trial court's order and remands the matter to the trial court, with instructions to remand to the Board, for further findings

regarding whether the property owned by An consisted of a single parcel or two preexisting, nonconforming lots.

An was the applicant before the Board, initially seeking dimensional variance relief and later seeking a determination that her property consisted of two preexisting, nonconforming lots. An had the burden to establish entitlement to her requested relief and she simply did not meet that burden. *See generally TKO Realty, LLC v. Zoning Hearing Bd. of Scranton*, 78 A.3d 732, 735 (Pa. Cmwlth. 2013) (burden of establishing nonconformity is on the applicant); *In re Appeal of Lester M. Prange*, *Inc.*, 647 A.2d 279, 281 (Pa. Cmwlth. 1994) (burden of proving the existence or extent of a nonconforming use rests on the property owner). The Board properly concluded that An "has not met her burden that her property consists of two pre[]existing non[]conforming lots . . ." and "[a]t best she has parts of two pre[]existing lots which she purchased and used as one lot with a single structure and residence." Board's Conclusion of Law No. 11; Record (R.) at 105.

The Board's conclusion that An did not establish her property consisted of two preexisting, nonconforming lots is supported by the record. Notably, the July 2002 deed to An and her then-husband states the property was "parts of Lots Nos. 16 and 17 in [the] Rodger's [sic] Acres Plan," R. at 116, the original subdivision plan approved in 1950.[1] Thereafter, as the majority notes:

> In October 1967, a "Two Lot Subdivision Plan"
> (McWilliams Plan) was created for Robert B.
> McWilliams, who owned Lots 16 and 17 at that time.
> [Transcript of Testimony (T.T.)] at 76-77. The
> McWilliams Plan identified Lots 16 and 17, using a dotted
> line to demarcate the then-existing boundary between

---

[1] The Rodgers Acres Plan refers to the Rodgers Acres Plan of Lots, which was recorded on March 22, 1950, and subdivided a large parcel of land in the Township into 21 lots, including Lots 16 and 17. *See* R. at 129.

them, and called for Lots 16 and 17 to be reconfigured by a new property line that divided them in roughly a north-northwest to south-southeast direction. *Id.* The McWilliams Plan lists the area on the western side of the new lot line as encompassing 40,000 square feet and the area on the eastern side as encompassing 50,962 square feet. Record evidence shows that both this latter measurement and new lot line comport with the current dimensions and western boundary of the Property.[2] *Id.* at 76-77, 106, 108, 141; [Notes of Testimony (N.T.)], 5/7/18, at 14, 23. The record also shows that the western half is listed on tax records as a single 41,000-square-foot tax parcel. T.T. at 108.

Slip op. at 2.

The majority opinion describes certain findings of the Board as a "blatant paradox," stating that since the 1967 plan showed An's property as a single parcel, then Louis Marsico, the adjacent property owner, cannot be credible insofar as he testified that he combined parts of Lots 16 and 17 to create An's property in 1977. Slip op. at 19. I cannot agree with the majority's characterization of the Board's findings. "Louis Marsico . . . testified that Lots 16 and 17 were 're-subdivided' in 1977, resulting in configuration of his parcel and the Property as *two unitary lots*."[3]  *Id.* at 5 (citing Board Hr'g Tr., 1/8/18, at 20, 31-32) (emphasis added). Marsico testified that he purchased Lots 16 and 17 in 1977 and created the parcel that An would later purchase in 2002. *Id.; see also* T.T., 5/7/18 at 28-31. In response to a question from one of the Board members, Marsico confirmed that Lots 16 and 17 simply "became divided in a different way" in 1977 and resulted in the

---

[2] The term "Property" refers to the 1.2 acres of R-1 residentially zoned real property owned by An and identified as 703 Woodland Drive, Pittsburgh, Pennsylvania.

[3] Unfortunately, the record does not include any evidence of the 1977 subdivision.

current configuration of the two lots "that are now designated as 290-B-112, which is [An's] and 290-A-108 which is [Marsico's]." T.T., 1/8/18, at 32.

Keeping in mind, as the majority notes, that the 1950 Rodgers Acres Plan of Lots created Lots 16 and 17 and the 1967 McWilliams Plan made Lots 16 and 17 into two differently configured lots with different boundaries, the historical reference in the deed or deeds conveying those newly created lots would have described those new lots as having been part of Lots 16 and 17. Indeed, the 1967 plan shows both the boundaries of the original Lots 16 and 17 (in dotted lines) and the boundaries of the two lots formed from parts of Lots 16 and 17 (in solid lines). Marsico's testimony can be reasonably interpreted that he bought both of the lots that were identified in the McWilliams Plan and then "re-subdivided" those two lots in 1977 to convey to An the parcel that she currently owns. The term "resubdivide" does not necessarily mean that a parcel was divided into additional lots (i.e., two lots to four lots). Rather, it can mean that the two lots existing after the 1967 subdivision were subdivided into two lots with the same total area, but with different legal descriptions. The two lots created by the 1967 McWilliams Plan were each parts of Lots 16 and 17 on the Rodgers Acres Plan. The two lots created in 1977 from the McWilliams lots could also be parts of Lots 16 and 17 on the Rodgers Acres Plan. In fact, the deed to An and her husband contains a reference to the parcel being conveyed as being "parts of Lots Nos. 16 and 17." R. at 116. Thus, Marsico's testimony supports the conclusion that An had a single parcel and does not contradict the conclusion that An did not have two preexisting, nonconforming lots.

The majority also takes issue with the Board's finding that Scott Chermak (Chermak), the Township's Code Enforcement Officer, testified that he could only locate a 1967 plan showing An's property as a single parcel. Finding of

Fact No. 5. The Board's finding with regard to Chermak merely summarizes his testimony that the only plan he could find was a 1967 plan showing An's property as a single parcel; the Board did not find that Chermak testified that An's property was in fact a single parcel in 1967. To the extent that the Board did find that An's property was in fact a single parcel in 1967, such a finding is supported by the 1967 plan, is not inconsistent with Marsico's testimony that he created two unitary lots in 1977 (his own and An's), both made up of parts of original Lots 16 and 17, and is contrary to An's allegation that her property consisted of two preexisting, nonconforming lots.

Finally, and importantly, to the extent that the majority relies on this "blatant paradox" to vacate and remand, such reliance is misplaced. An was the applicant seeking relief, asking the Board to find that her property consisted of two preexisting, nonconforming lots, and she bore the burden of proving her entitlement to such relief. *TKO Realty*; *In re Appeal of Lester M. Prange, Inc.* While there is undoubtedly a tremendous amount of confusion regarding the subdivision(s) of original Lots 16 and 17 that occurred post-1950, An failed to present sufficient evidence to establish the nonconforming nature of her property. The majority's decision to remand this matter to the trial court and, ultimately, the Board, effectively gives An a second chance to prove her case.

For these reasons, I would affirm the Board's decision both as to the denial of An's request for dimensional variance relief and the denial of her request for a determination that her property consisted of two preexisting, nonconforming lots.

_____
CHRISTINE FIZZANO CANNON, Judge

CFC-5